UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| JOSH TILLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-01068 JDB-egb |
| | ) | |
| DECATUR COUNTY, ROY WYATT, in his | ) | |
| Individual and Official Capacities, PAMELA | ) | |
| BRASHER, in her Individual and Official | ) | |
| Capacities, ADVANCED CORRECTIONAL | ) | |
| HEALTHCARE, DEPUTY JOSH BLANKENSHIP | ) | |
| in his Individual and Official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS

Plaintiff, Josh Tillman, brought this civil proceeding for damages against Defendants, Decatur County, Tennessee; Decatur County Sheriff Roy Wyatt; former Decatur County Jail Administrator Pamela Brasher; former Decatur County Deputy Josh Blankenship; and Advanced Correctional Healthcare ("ACH"), arising from injuries incurred from a seizure following medication withdrawal after being incarcerated from March 29, 2014 to April 2, 2014. (Compl., Docket Entry ("D.E.") 1.) Tillman brings claims under 42 U.S.C. § 1983, negligence by Defendant ACH, state law tort claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against Decatur County and the individual Defendants, and a demand for punitive damages. Before the Court is a partial motion to dismiss by Defendants, Decatur County, Tennessee, Wyatt, Brasher, and Blankenship pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. 23.) For the reasons set forth below, the

1

Defendants' motion is GRANTED IN PART and DENIED IN PART.

I. Factual Background

Plaintiff alleges the following facts. During the relevant times, Wyatt was Sheriff of Decatur County, Brasher was the Jail Administrator, Blankenship was a Deputy in Decatur County Sheriff's Department, and ACH was Decatur County's medical provider. (D.E. 1 ¶¶ 3-6.) Prior to incarceration, Tillman was prescribed Xanax by his family doctor to be taken twice daily to treat an anxiety disorder. (*Id.* at ¶ 13.) Plaintiff's prescription was well-known to jail staff and been documented in his medical file. (*Id.* at ¶ 13, 15.) During previous periods of incarceration, Tillman had been denied access to Xanax by Lisa Hatch Hubbard, a physician's assistant and employee of ACH, pursuant to the "no narcotics" rule established by the Decatur County Jail Policy Manual. (*Id.* at ¶16.) Hubbard signed the medical denial forms as a physician even though she was not. (*Id.*) Abrupt discontinuance of Xanax is known to lead to withdrawal, which could result in serious bodily harm or death. (*Id.* at ¶ 14.) Long-term users cannot safely discontinue the medication unless the dosage is tapered off slowly while the patient is appropriately monitored. (*Id.*)

On March 29, 2014, Tillman was incarcerated in the Decatur County Jail pursuant to a sentence which he was serving on the weekends. (*Id.* at ¶¶ 13, 15.) On going through medical intake upon being booked, it was noted he was on "nerve medication"—a colloquialism for anxiety disorder medication—on a questionnaire completed by Blankenship. (*Id.* at ¶ 17.) The deputy did not document the specific medication or dosages prescribed to Tillman, did not take his vital signs, and failed to monitor Plaintiff for any indication of withdrawal symptoms or warn other corrections staff to do so. (*Id.* at ¶ 18.)

Blankenship did not notify a physician of Tillman's prescription. (*Id.* at ¶ 24.) Two days

after he was admitted to the jail, Plaintiff began experiencing withdrawal symptoms. (*Id.* at ¶ 21.) He requested his medication several times and "indicated . . . that he would continue to have withdrawal symptoms if his medications continued to be denied." (*Id.* at ¶ 22.)

On April 2, 2014, Plaintiff was on a work detail with the Decatur County Sheriff's Department, when he suffered a grand mal seizure, causing him to fall. (*Id.* at ¶ 26.) Tillman was taken to a local hospital and then transported to Jackson-Madison County General Hospital, where he was given his Xanax medication. (*Id.* at ¶¶ 26-27.) The cause of the seizure was identified as acute Xanax withdrawal. (*Id.* at ¶ 27.)

II. Standard of Review

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) instructs that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) requires the Court to "'construe the complaint in light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.'" *Alattiyat v. City of Memphis*, No. 06-2437, 2007 WL 838129, at *2 (W.D. Tenn. Mar. 15, 2007) (quoting *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902

(6th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court delineated a two-prong test for analyzing 12(b)(6) motions. First, the reviewing court should consider what allegations are merely "legal conclusions" and disregard them when ruling on the motion. *Id.* at 678. Second, the court should evaluate the remaining well-pleaded facts and determine whether they give rise to a "plausible claim for relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

III. LEGAL ANALYSIS

A. Official Capacity Claims

This action by Plaintiff was brought against the three individual Defendants in both their individual and official capacities.[1] The individual Defendants contend that the official capacity claims should be dismissed because these assertions are redundant as Decatur County itself is a party to the action. The Court agrees. "In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent. An official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009) (internal citations & quotation marks omitted).

---

[1]The Defendants in their Memorandum of Law in Support of Defendants' Partial Motion to Dismiss (D.E. 23-1) pointed out that in the Complaint (D.E. 1) caption, it listed Brasher as being sued in her individual and official capacities, but in Paragraph 4 stated she was only being sued in her individual capacity. The Court is proceeding under the assumption Plaintiff intended to sue Brasher in her official capacity as well.

As the allegations against Wyatt, Brasher, and Blankenship in their official capacities are in effect a suit against Decatur County, these claims are DISMISSED. *See Cox v. Reagan*, No. 3:06-CV-250, 2009 WL 2579655, at *4 (E.D. Tenn. Aug. 17, 2009) (holding that an official capacity claim against an officer was essentially a suit against the defendant municipality and thus, dismissal of the officer was appropriate).

    B. Section 1983 Claims Against Wyatt and Brasher

Wyatt and Brasher assert that the claims against them in their individual capacities also should be dismissed as there are no allegations that they were personally involved in the events leading to this action. "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)). To establish personal liability under § 1983, it must be shown that the official acted to "cause[] the deprivation of a [federal] right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Iqbal*, 556 U.S. at 676 (explaining that, because there is no vicarious liability in § 1983 suits, a plaintiff must plead that each government defendant, "through the official's own individual actions, has violated the Constitution"). "[E]ven if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless 'the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Combs*, 315 F.3d at 558 (quoting *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). The liability of supervisors cannot be based solely on the right to control employees, *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.

1984), or "simple awareness of employees' misconduct," *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003).

Here, Plaintiff asserts nothing in his complaint alleging any personal involvement by Wyatt or Brasher. His theory of why these defendants should be held personally liable is centered on his contention that they were the "policymakers," and that the "rules, regulations, customs, policies and procedures of the Defendants were inadequate and unreasonable, and were the moving force behind the constitutional deprivations suffered by Plaintiff." (D.E. 1 ¶¶ 37-38.) Tillman argues that "[t]he policy made and enforced by Wyatt and Brasher is the clearest form of authorization and approval that could exist." (D.E. 33 at 5.) He attempts to conflate a § 1983 claim of individual supervisory liability with a claim of municipal liability. It is the municipality that "can be liable under Section 1983 . . . where its policies are the 'moving force [behind] the constitutional violation.'" *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 848 (E.D. Tenn. 2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Policies promulgated by officials with final policymaking authority may be the basis for attaching *municipality liability* as opposed to individual liability. *Miller*, 408 F.3d at 813 (emphasis added). Although policies furthered by supervisors may also give rise to supervisory liability, the policies must be specifically advanced by them. *See Bennett v. City of Eastpointe*, 410 F.3d 810, 821 (6th Cir. 2005) (a supervisor giving specific directions regarding a policy to officers may give rise to supervisory liability). Here, Plaintiff does not allege either Defendant affirmatively engaged in any instruction or gave any direction to any of the deputies or jail officers involved; the policy simply existed. Therefore, while Tillman's allegations regarding the jail's policies may give rise to a claim for municipality liability, it does not give rise to a claim for individual liability.

Additionally, Plaintiff also accuses Wyatt and Brasher of failing to properly train the

employees.  (D.E. 1 at ¶ 36.)  However, failing to train employees cannot give rise to § 1983 liability as a claim "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'"  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "A supervisor is not liable under § 1983 for failing to train unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'"  *Everson v. Leis*, 556 F.3d 484 (6th Cir. 2009) (quoting *Hays*, 668 F.2d at 874).  In *Harvey v. Campbell County, Tennessee*, the Sixth Circuit held a supervisor cannot be "held liable for [an officer's] acts on a theory of *respondeat superior*."  *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x. 557, 562 (6th Cir. 2011).  The court explained that "[t]he *County* may, however, be held liable under § 1983 if it maintained a policy or custom that caused the violation of [the plaintiff]'s rights."  *Id.* (emphasis added).  Further, "[t]he County may be held liable if [the officer]'s actions can be attributed to its failure to adequately train [the officers] *and* this failure amounts to 'deliberate indifference' to the rights of members of the public . . . ."  *Id.*  Without personal involvement, "failure-to-train claims against individual defendants are properly deemed brought against them in their official capacities, to be treated as claims against the county."  *Id.* at 563 (citing *Miller*, 408 F.3d at 817 n.3).  The court concluded that even if the plaintiff was able to show that the supervisors were "County policymaker[s] on matters of training and [were] so deliberately indifferent to the need for more comprehensive training as to render the training deficiency a matter of *de facto* County policy, [the supervisors] would be liable, if at all, in [their] *official* capacit[ities], i.e. rendering the County liable."  *Id.*

Nothing in the complaint alleges personal involvement or knowledge by either of these Defendants when Tillman was in custody.  Allegations that the correctional officers were not properly trained are more appropriately submitted as support for a failure-to-train theory against

the municipality itself and not against the supervisors in their individual capacities. *See Harris*, 489 U.S. at 385 (recognizing that a systematic failure to train officers adequately as a custom or policy may lead to city liability). While an individual supervisor may still be held liable in his or her individual capacity under a failure-to-train theory, Plaintiff must point to a specific action by the supervisor for liability to be incurred. Nothing in the complaint alleges personal involvement or knowledge by Wyatt or Brasher; rather, it merely asserts that they were supervisory officials. Because of this, neither can be held individually liable under either a theory of failure-to-train or supervisory liability. Therefore, Defendants' motion to dismiss § 1983 claims against them is GRANTED.

   C. GTLA and State Law Claims

Plaintiff alleges both negligence and negligent infliction of emotional distress against Decatur County and intentional infliction of emotional distress against the individual Defendants.[2] State law claims against governmental entities and their employees are governed by the Tennessee Governmental Tort Liability Act ("GTLA"). *See* Tenn. Code Ann. § 29-20-101. These claims would ordinarily confer supplemental jurisdiction in this Court because they arise out of the same facts and form part of the same case or controversy. *See* 28 U.S.C. § 1367(a). However, GTLA claims must be brought in "strict compliance" with the terms of the state statute. *See* Tenn. Code Ann. § 29-20-201(c). The GTLA expressly states that Tennessee "circuit courts shall have exclusive original jurisdiction" over claims brought pursuant to its provisions. Tenn. Code Ann. § 29–20–307. A district court may, in its discretion, decline supplemental jurisdiction over a state law claim even if jurisdiction would otherwise be proper under § 1367(a). Section 1367(c)(4) allows a district court to "decline to exercise supplemental

---

[2]Tillman concedes that he does not intend to bring a claim of intentional infliction of emotional distress against Decatur County, and thus, any question of such a claim being included in this lawsuit is moot.

8

jurisdiction over a claim under subsection (a) if . . . (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). The Sixth Circuit has held that "the Tennessee legislature expressed a clear preference that [GTLA] claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance [under § 1367(c)(4)] for declining jurisdiction." *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000). Consequently, district courts in Tennessee have regularly declined to exercise its supplemental jurisdiction over GTLA claims, and this Court finds no compelling reason to act differently with regards to the instant case. *See, e.g.*, *Hullett v. DeKalb Cnty., Tenn.*, No. 2:11-0016, 2012 WL 398288, at *3 (M.D. Tenn. Feb. 7, 2012); *Cunningham v. Reid*, 337 F. Supp. 2d 1064, 1069-70 (W.D. Tenn. 2004). As Plaintiff's GTLA claims should be tried in state court, all of his state law claims should be consolidated into one proceeding for the sake of judicial economy and convenience. *See Alexander v. Byrd*, No. 14-1022, 2014 WL 5449626, at *10 (W.D. Tenn. Oct. 24, 2014). Therefore, this Court declines to exercise supplemental jurisdiction over Plaintiff's GTLA and state law claims. *See Ables v. Shelby Cnty., Tenn.*, No. 2:10–CV–02169–JPM–dkv, 2010 WL 3024959, at *5 (W.D. Tenn. July 29, 2010) (state law claims dismissed in light of Sixth Circuit's finding that Tennessee legislature's preference that GTLA claims be addressed in state courts was an exceptional circumstance under § 1327(c)(4) supporting order declining jurisdiction).

For these reasons, the Court will not exercise its supplemental jurisdiction over Plaintiff's state law claims, and they are DISMISSED without prejudice.

D. Plaintiff's Request for Punitive Damages

Defendants primarily focus their argument for dismissal of Plaintiff's request for punitive damages on the inability to recover punitive damages in a § 1983 claim against a municipality (D.E. 23-1 at 10-11); Tillman agrees with Defendants and argues that his demand for punitive

damages lies only against the individual Defendants. (D.E. 33 at 16.) Punitive damages are appropriate in a § 1983 action "'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 (1983)). "Because punitive damages are a mechanism for punishing the defendant for "willful or malicious conduct," they may be granted "only on a showing of the requisite intent." *Id.* (quoting *Memphis Cmmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n. 9 (1986)). "Although punitive damages may be available upon a showing of "evil motive or intent" or "callous indifference," punitive damages are also appropriate when a defendant's action involves even reckless disregard of the plaintiff's rights." *See Smith*, 461 U.S. at 56.

Here, Tillman alleges "Defendant Blankenship failed to document the specific medications prescribed and their dosages and frequency; failed to take Plaintiff's vital signs; failed to take any other steps to monitor Plaintiff's condition for withdrawal symptoms or to warn other staff to monitor Plaintiff for withdrawal symptoms." (D.E. 1 at ¶ 18.) Additionally, Plaintiff claims that he requested his medication multiple times, that all requests were denied, and that he "indicated to Jail staff on March 31, 2014, that he would continue to have withdrawal symptoms if his medications continued to be denied." (*Id.* at ¶ 22.) Despite this, "no employee of Decatur County Jail monitored Plaintiff as a person who could experience withdrawal from benzodiazepines. Deputy Blankenship did not notify other jail staff to monitor the Plaintiff for withdrawal symptoms, as medical protocols would dictate." (*Id.* at ¶ 23.) As a result of his withdrawal, Tillman suffered a "violent grand mal seizure." (*Id.* at ¶¶ 26-27.) Construing the complaint in the light most favorable to Plaintiff, this behavior could be deemed as reckless. Therefore, as Tillman has made sufficient allegations to state a claim for punitive damages

against the individual defendants under § 1983, Defendants' motion to dismiss that claim is DENIED.

IV. CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss Plaintiff's claims against Wyatt, Brasher, and Blankenship in their official capacities and against Defendants Wyatt and Brasher under § 1983 is GRANTED. The Court declines to exercise its supplemental jurisdiction over Plaintiff's GTLA and state law claims and therefore orders that they be DISMISSED WITHOUT PREJUDICE. Defendants' motion to dismiss Plaintiff's request for punitive damages against the individual defendants is DENIED.

IT IS SO ORDERED this 25th day of September 2015.

                              s/ J. DANIEL BREEN
                              CHIEF UNITED STATES DISTRICT JUDGE